Dear Mr. Ritchie and Mr. Durden:
The members of the Central Collection Commission of Washington Parish (the "CCC") have presented this office with a number of questions regarding actions taken or to be taken by the CCC in connection with its responsibility to provide for the collection of sales and use taxes in Washington Parish.
According to your correspondence, the taxing bodies in Washington Parish could not agree on a central tax collector prior to July 1, 1992. Therefore, in accordance with La. Const. (1974) Art. VII, Sec. 3, a central collection commission (the CCC) was formed for the Parish, by the Legislature, by Act 1057
of the 1992 Regular Legislative Session, which enacted R.S. 33:2844.1 (the "Act").
Before addressing each of the questions presented by the CCC, we must first advise that as we read the Act, the CCC is the `tax collector' of sales and use taxes in Washington Parish, and as such is required to collect all sales and use taxes in Washington Parish, as opposed to merely `choosing' a tax collector. Sec. A of the Act provides, in pertinent part:
 ". . . the sales and use taxes . . . shall be collected by a central collection commission in those parishes where a single collector of sales and use taxes has not been established by July 1, 1992" (emphasis added).
This interpretation is consistent with our interpretation of La. Const. (1974) Art. VII, Sec. 3, which required the Legislature to provide for the collection of sales and use taxes "by a central collection commission" (emphasis added) in those parishes where there was no single collector or commission as of July 1, 1992. The Legislature fulfilled this duty by the adoption of the Act, which provides for the collection of taxes by the commissions established therein.
Question 1. May the CCC vote by majority, based on a weighted vote, to exceed the one and one-half percent maximum cost of collection referred to in Sec. B(3) of R.S. 33:2844.1, or is the unanimous vote of all political subdivisions required to exceed the maximum?
As we interpret Sec. B(3) of the Act, the cost of collection, which is payable by each political subdivision to defray the CCC's expenses, can only exceed one and one-half percent if each political subdivision unanimously agrees to the higher percentage. This unanimous agreement must be reached between the various political subdivisions, and not merely between the political subdivisions' representatives on the CCC. Sec. B(3) of the Act states, in pertinent part:
 "the cost of collection shall in no case exceed one and one-half percent . . . unless otherwise authorized by the unanimous agreement of all political subdivisions within the parish levying a sales and use tax" (emphasis added).
It is our opinion that the CCC does not have the ability, by either majority or unanimous vote of its members, to increase the cost of collection in excess of one and one-half percent.
Question 2. In the event the CCC wants to solicit proposals from entities other than the political subdivisions which make up the CCC and levy a sales and use tax in the Parish, must the CCC do so by unanimous vote of all of the taxing bodies or can this be authorized by a majority vote or a majority vote based on the weighted vote?
As previously stated, we interpret the Act as creating the CCC as the `collector' of all sales and use taxes in Washington Parish. However, we see no reason why the CCC, as a "body corporate", cannot fulfill its obligations as sales and use tax collector by contracting with an entity, as opposed to hiring a staff, to perform the day to day procedures of the collection and remittance process. Of course, the CCC would still bear primary responsibility, as the tax collector, for the proper collection of sales and use taxes. We also note that the total cost of collection, payable to the CCC, cannot exceed one and one-half percent of the taxes collected on behalf of each political subdivision. As such, the amount payable to a contractor could not exceed one and one-half percent of the amount of taxes collected, less any operational costs of the CCC.
Question 3. The Commission has adopted Roberts Rules of Order as a procedural guideline. In votes on routine procedural matters, does a motion pass or fail based on a majority vote of those members present or a majority vote taking into account the weighted average?
Sec. B(5) of the Act provides that any decisions of the commission shall be made by "a majority vote of the members of the commission". However, Sec. D of the Act provides:
 "Notwithstanding any other provision of this section to the contrary, the decisions of the central collection commission of Washington Parish shall be determined by a majority vote of the commission, however, each political subdivision levying a sales and use tax within the parish shall have a vote weighted by the proportion that its sales and use tax collections bear to the total sales and use tax collections by all political subdivisions in the entire parish for the year preceding July 1, 1992."
It is the opinion of this office that Sec. D of the Act provides that votes taken by the CCC must carry by a weighted majority vote of all members, and not merely a majority of those present. Sec. D clearly refers to a majority vote "of the commission", and not to a majority of those present at a given meeting.
Question 4. Can the taxing bodies, through their elected boards or members, direct its member of the CCC how to vote on any issue?
Sec. B(1) of the Act provides that the CCC shall consist of "one representative" from each political subdivision levying a sales tax. As we interpret this provision, the members are not merely appointed by the political subdivisions, they are to `represent' the political subdivisions. As such, it is the opinion of this office that the political subdivisions can direct their representatives as to how issues should be voted upon, and that each representative should vote in the manner which he believes represents the will of his political subdivision. Should a political subdivision find its representative's votes unsatisfactory, it has the option to remove the representative and substitute another member to represent it on the CCC. Of course, a political subdivision would be bound by any vote cast by its representative, even if the representative did not vote as directed by his or her political subdivision.
Question 5. In the event a contract is authorized for a single tax collector/contractor with a vote made in accordance with the answers to the questions above, does the contract have to be approved by each taxing body on an individual basis?
As previously stated, the CCC is the `tax collector' of sales and use taxes for Washington Parish, and as such bears responsibility for the actions of any party with whom it contracts to act on its behalf. Therefore, in our opinion, the express agreement of each political subdivision is not required if the CCC contracts with an entity other than a political subdivision, to collect sales and use taxes on its behalf.
We are aware of Art. VII, Sec. 3(B)(2) and (3), but these provisions refer to the situation where a local law would be enacted by the legislature to appoint a single collector as "the" tax collector for a particular parish.
Question 6. Can a taxing body remove its member and reappoint another at any time without regard to any term consideration?
It is our opinion that a political subdivision can remove and reappoint its representative on the CCC at will, as neither the Act, nor the constitutional provision, require that members serve for a particular term.
Question 7. In the event another political subdivision, which is not a sales taxing body at this time, becomes a sales taxing body during the pendency of a contract, is that new taxing body: (a) authorized a member on the commission and (b) bound by the terms of any contract which may be in effect at the time?
It is the opinion of this office that political subdivisions which begin levying a sales and use tax after the establishment of the CCC will automatically become members of the CCC. Sec. B(1) of the Act states, in pertinent part, that the CCC "shall consist of one representative from each political subdivision within the parish which levies a sales and use tax". It is our further opinion that such a political subdivision would be bound by the terms of any contract previously entered into by the CCC.
Question 8. Is Sec. D of the Act a local and special law, and, if so, did the Legislature pass this Act in accordance with the Constitution?
It is the opinion of this office that Sec. D of the Act is a local law as its subject matter regards only Washington Parish. La. Const. (1974) Art. III, Sec. 13 provides:
 "No local or special law shall be enacted unless notice of the intent to introduce a bill to enact such a law has been published on two separate days, without cost to the state, in the official journal of the locality where the matter to be affected is situated. The last day of publication shall be at least thirty days prior to introduction of the bill. The notice shall state the substance of the contemplated law, and every such bill shall recite that notice has been given."
In our opinion, if the Act (specifically Sec. D thereof) was not published as required by Art III, Sec. 13, then it is subject to constitutional challenge. It is our further opinion that in accordance with La. Const. (1974) Art. VII, Sec.3(B)(2), such a local law would also be subject to constitutional challenge if it was not "enacted by two-thirds of the elected members of each house".
Trusting this adequately responds to your inquiry, I remain,
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: JEANNE-MARIE ZERINGUE Assistant Attorney General
RPI:JMZ:jav 0233n